UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MISSOURI
EASTERN DIVISION

| | | |
|---|---|---|
| UNITED STATES OF AMERICA, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | No. 4:20-CR-00716-SEP-PLC |
| | ) | |
| SUSAN HAMPE, | ) | |
| | ) | |
| Defendant. | ) | |

## GUILTY PLEA AGREEMENT

Come now the parties and hereby agree, as follows:

## 1. PARTIES:

The parties are the defendant Susan Hampe, represented by defense counsel Kevin Curran, and the United States of America (hereinafter "United States" or "Government"), represented by the Office of the United States Attorney for the Eastern District of Missouri. This agreement does not, and is not intended to, bind any governmental office or agency other than the United States Attorney for the Eastern District of Missouri. The Court is neither a party to nor bound by this agreement.

## 2. GUILTY PLEA:

Pursuant to Rule 11(c)(1)(A), Federal Rules of Criminal Procedure, in exchange for the defendant's voluntary plea of guilty to Count I of the charge, the Government agrees that no further federal prosecution will be brought in this District relative to the defendant's conspiracy to commit wire fraud, of which the Government is aware at this time.

1

In addition, the parties agree that the U.S. Sentencing Guidelines Total Offense Level analysis agreed to by the parties herein is the result of negotiation and led, in part, to the guilty plea. The parties further agree that either party may request a sentence above or below the U.S. Sentencing Guidelines range (combination of Total Offense Level and Criminal History Category) ultimately determined by the Court pursuant to any chapter of the Guidelines and Title 18, United States Code, Section 3553(a). The parties further agree that notice of any such request will be given no later than ten days prior to sentencing and that said notice shall specify the legal and factual bases for the request.

The defendant also agrees, pursuant to the guilty plea to Count I, to forfeit to the United States all property subject to forfeiture under the applicable statute(s), including but not limited to: any and all funds received during the scheme.

## 3. **ELEMENTS**:

As to Count I, the defendant admits to knowingly violating Title 18, United States Code, Section 1349, and admits there is a factual basis for the plea and further fully understands that the elements of the crime are:

1. Two or more persons, in some way or manner, agreed to try to accomplish a common and unlawful plan to commit wire fraud, and;
2. The defendant knew the unlawful purpose of the plan and willfully joined in it

## 4. **FACTS**:

The parties agree that the facts in this case are as follows and that the government would prove these facts beyond a reasonable doubt if the case were to go to trial. These facts may be considered as relevant conduct pursuant to Section 1B1.3:

2

Defendant Susan Hampe is a resident of St. Louis County, Missouri. Hampe is retired, and has not worked or lived in Massachusetts, West Virginia, or Ohio. At no time was defendant Susan Hampe entitled to receive unemployment insurance ("UI") benefits from Massachusetts, West Virginia, or Ohio. The Social Security Act of 1935 initiated the UI system, which is operated and managed by each state at the direction of the U.S. Department of Labor ("DOL"). In the majority of states, benefit funding is based solely on a tax imposed on employers. However, DOL funds administrative costs associated with each state's UI program. The UI system is designed to provide benefits to persons who are out of work due to no fault of their own, and who meet other eligibility requirements of the state program. Eligibility for UI, benefit amounts, and the length of time benefits are available is determined by each state's laws. In all states, individual claimants must be eligible for employment and actively searching for employment while receiving UI benefits. A claimant receives UI benefits by completing an application at a local "one-stop center," by telephone, or online at each state's website. A claimant must provide the claimant's name, date of birth, social security number, home address, and other personal information. On a weekly or bi-weekly basis, the claimant then files for weekly payment benefits by certifying that the claimant is unemployed, eligible for benefits, and is seeking employment. The state agencies authorize their financial services sections to release unemployment compensation funds in the form of either: (a) a state contracted debit card mailed to the applicant; (b) a direct deposit into a pre-paid debit card account; (c) a direct deposit into the claimant's designated bank account; (d) or in rare cases, some states will issue a check, if requested.

Direct deposits of UI funds were completed through the automated clearing house ("ACH"), an electronic funds-transfer system that facilitates payments within the United States. From time to time, the UI deposits may be coded with identifiers showing the state of the UI claim's origin or the name of the individual associated with the UI claim whose identity is used to make the claims. According to the United States Centers for Disease Control and Prevention ("CDC"), Coronavirus Disease 2019 ("COVID-19") is a respiratory illness that can spread from person to person. COVID-19 can attack human lungs and kill infected persons, especially those who have certain risk factors identified by the CDC. Section 2104 of the Coronavirus Aid, Relief, and Economic Security ("CARES") Act, Pub. L. No. 116-136, 134 Stat. 281(March 27, 2020), entitled "Emergency Increase in Unemployment Compensation Benefits," provided for an additional $600 weekly payment, known as "Federal Pandemic Unemployment Compensation" or "FPUC," to certain eligible individuals who were receiving other UI benefits under state law.

From on or about May of 2020, to on or about June of 2020, the primary purpose of the conspiracy was for defendant Susan Hampe to defraud the unemployment insurance programs of Massachusetts, West Virginia, and Ohio, and to obtain money and property by means of materially false and fraudulent pretenses, representations, and promises, and willfully participating in such a scheme with knowledge of its fraudulent nature. On or about May and June of 2020, Hampe began communicating with co-conspirators who requested her banking information. Defendant provided her name and bank account to co-conspirators in that time period so that false and fraudulent representations could be made to the UI programs of Massachusetts, West Virginia, and Ohio in order to obtain ACH deposits from those programs into Hampe's bank account. Defendant then attempted to withdraw money that was sent from

4

the UI programs of Massachusetts, West Virginia, and Ohio to her bank account, keep some of these fraudulent proceeds, and send the remaining proceeds to other(s).

On June 5, 2020, Hampe received a wire transfer of $6,822 via ACH deposit from Workforce WV PUABENEFIT, which was a payment in UI benefits from the state of West Virginia.  On June 23, 2020, Hampe received a wire transfer of $9,657 via ACH deposit from ODJFS PUA FEDERAL.  During May through June 2020, Defendant Hampe received approximately $27,409 in total payments from the unemployment compensation programs of Massachusetts, West Virginia, and Ohio.  On May 21, 2020 and June 4, 2020, Defendant attempted to withdraw funds from her bank account in relation to the fraudulent funds.  On those occasions, bank employees warned Defendant that the unemployment compensation program payments to Hampe's account were fraudulent, but Hampe kept trying to receive and withdraw payments from the programs, even after receiving the bank's warnings.  Defendant, a retired resident of Missouri, fraudulently received deposits from other states and, when confronted regarding the funds, made false claims to bank officials that she had worked in California.   Even after being informed by the bank that the funds were fraudulent, Hampe continued with the conspiracy and made additional attempts to receive and access additional funds.  The bank froze these transactions, and ultimately closed Hampe's bank account because of this fraudulent activity.  Hampe was been interviewed by United States Secret Service and admitted that she knew her conduct was wrongful.

### 5. **STATUTORY PENALTIES**:

The defendant fully understands that the maximum possible penalty provided by law for the crime to which the defendant is pleading guilty is imprisonment of not more than 20 years, a

fine of not more than $250,000, or both such imprisonment and fine.  The Court may also impose

a period of supervised release of not more than 3 years.

6. **U.S. SENTENCING GUIDELINES:  2018 MANUAL**:

      The defendant understands that this offense is affected by the U.S. Sentencing Guidelines

and the actual sentencing range is determined by both the Total Offense Level and the Criminal

History Category.  The parties agree that the following are the applicable U.S. Sentencing

Guidelines Total Offense Level provisions.

     a. **Chapter 2 Offense Conduct**:

     **(1)** **Base Offense Level:**  The parties agree that the base offense level is 7, as found in

Section 2B1.1(a).

     **(2)** **Specific Offense Characteristics:**  The parties agree that the following Specific

Offense Characteristics apply: an additional 4 points is added because a loss over $15k occurred,

pursuant to 2B1.1(b)(1)(C).

     b. **Chapter 3 Adjustments**:

       **(1) Acceptance of Responsibility:** The parties agree that two levels should be

deducted pursuant to Section 3E1.1(a). A third point is not applicable because the total offense

level is not 16 or greater.  The parties agree that the defendant's eligibility for this deduction is

based upon information presently known.  If subsequent to the taking of the guilty plea the

government receives new evidence of statements or conduct by the defendant which it believes

are inconsistent with defendant's eligibility for this deduction, the government may present said

evidence to the court, and argue that the defendant should not receive all or part of the deduction

pursuant to Section 3E1.1, without violating the plea agreement.

**(2)  Other Adjustments:**  The parties agree that the following additional adjustments apply:  None.

**c.  Other Adjustment(s)/Disputed Adjustments:**  None.

**d.  Estimated Total Offense Level:**  The parties estimate that the Total Offense Level is 9.

**e.  Criminal History:**  The determination of the defendant's Criminal History Category shall be left to the Court.  Either party may challenge, before and at sentencing, the finding of the Presentence Report as to the defendant's criminal history and the applicable category.  The defendant's criminal history is known to the defendant and is substantially available in the Pretrial Services Report.

**f.  Effect of Parties' U.S. Sentencing Guidelines Analysis:**  The parties agree that the Court is not bound by the Guidelines analysis agreed to herein.  The parties may not have foreseen all applicable Guidelines.  The Court may, in its discretion, apply or not apply any Guideline despite the agreement herein and the parties shall not be permitted to withdraw from the plea agreement.

**7.  WAIVER OF APPEAL AND POST-CONVICTION RIGHTS:**

**a.  Appeal:**  The defendant has been fully apprised by defense counsel of the defendant's rights concerning appeal and fully understands the right to appeal the sentence under Title 18, United States Code, Section 3742.

**(1)  Non-Sentencing Issues:**  The parties waive all rights to appeal all non-jurisdictional, non-sentencing issues, including, but not limited to, any issues relating to pretrial

motions, discovery, the guilty plea, the constitutionality of the statute(s) to which defendant is

pleading guilty and whether defendant's conduct falls within the scope of the statute(s).

**(2) Sentencing Issues:** In the event the Court accepts the plea, accepts the U.S.

Sentencing Guidelines Total Offense Level agreed to herein, and, after determining a Sentencing

Guidelines range, sentences the defendant within or below that range, then, as part of this

agreement, the defendant hereby waives all rights to appeal all sentencing issues other than

Criminal History, but only if it affects the Base Offense Level or Criminal History Category.

Similarly, the Government hereby waives all rights to appeal all sentencing issues other than

Criminal History, provided the Court accepts the plea, the agreed Total Offense Level and

sentences the defendant within or above that range.

**b.   Habeas Corpus:**   The defendant agrees to waive all rights to contest the conviction or

sentence in any post-conviction proceeding, including one pursuant to Title 28, United States

Code, Section 2255, except for claims of prosecutorial misconduct or ineffective assistance of

counsel.

**c.   Right to Records:**   The defendant waives all rights, whether asserted directly or by a

representative, to request from any department or agency of the United States any records

pertaining to the investigation or prosecution of this case, including any records that may be

sought under the Freedom of Information Act, Title 5, United States Code, Section 522, or the

Privacy Act, Title 5, United States Code, Section 552(a).

**8.   OTHER:**

**a.   Disclosures Required by the United States Probation Office:**   The defendant agrees

to truthfully complete and sign forms as required by the United States Probation Office prior to

8

sentencing and consents to the release of these forms and any supporting documentation by the United States Probation Office to the government.

      **b.** **Civil or Administrative Actions not Barred; Effect on Other Governmental Agencies:** Nothing contained herein limits the rights and authority of the United States to take any civil, tax, immigration/deportation or administrative action against the defendant.

      **c.** **Supervised Release:** Pursuant to any supervised release term, the Court will impose standard conditions upon the defendant and may impose special conditions related to the crime defendant committed.   These conditions will be restrictions on the defendant to which the defendant will be required to adhere.  Violation of the conditions of supervised release resulting in revocation may require the defendant to serve a term of imprisonment equal to the length of the term of supervised release, but not greater than the term set forth in Title 18, United States Code, Section 3583(e)(3), without credit for the time served after release.  The defendant understands that parole has been abolished

      **d.** **Mandatory Special Assessment:** Pursuant to Title 18, United States Code, Section 3013, the Court is required to impose a mandatory special assessment of $100 per count for a total of $200, which the defendant agrees to pay at the time of sentencing.  Money paid by the defendant toward any restitution or fine imposed by the Court shall be first used to pay any unpaid mandatory special assessment.

      **e.** **Possibility of Detention:** The defendant may be subject to immediate detention pursuant to the provisions of Title 18, United States Code, Section 3143.

      **f.** **Fines, Restitution and Costs of Incarceration and Supervision:** The Court may impose a fine, restitution (in addition to any penalty authorized by law), costs of incarceration

and costs of supervision. The defendant agrees that any fine or restitution imposed by the Court will be due and payable immediately. Pursuant to Title 18, United States Code, Section 3663A, an order of restitution is mandatory for all crimes listed in Section 3663A(c). Regardless of the Count of conviction, the amount of mandatory restitution imposed shall include all amounts allowed by Section 3663A(b) and the amount of loss agreed to by the parties, including all relevant conduct loss. The defendant agrees to provide full restitution to all victims of all charges in the indictment.

       **g. <u>Forfeiture</u>:** The defendant agrees the stipulated facts above are sufficient to support forfeiture of certain assets pursuant to the applicable forfeiture authorities. [Defendant specifically agrees to the forfeiture of the following: approximately $27,409 in total payments from the unemployment compensation programs of Massachusetts, West Virginia, and Ohio. The defendant agrees the Court may enter a consent preliminary order of forfeiture any time before sentencing, and such Order will become final as to the defendant when it is issued and will be part of the sentence. The defendant agrees not to object to any administrative, civil or criminal forfeiture brought against any assets subject to forfeiture. The defendant will execute any documents and take all steps needed to transfer title or ownership of said assets to the government and/or to rebut the claims of nominees and/or alleged third party owners. The defendant knowingly and intelligently waives all constitutional and statutory challenges to any forfeiture carried out in accordance with this plea agreement, including but not limited to that defendant was not given adequate notice of forfeiture in the charging instrument.

       The defendant knowingly and voluntarily waives any right, title, and interest in all items seized by law enforcement officials during the course of their investigation, whether or not they

are subject to forfeiture, and agrees not to contest the vesting of title of such items in the United States. The defendant agrees that said items may be disposed of by law enforcement officials in any manner.

9. **ACKNOWLEDGMENT AND WAIVER OF THE DEFENDANT'S RIGHTS:**

In pleading guilty, the defendant acknowledges, fully understands and hereby waives his rights, including but not limited to: the right to plead not guilty to the charges; the right to be tried by a jury in a public and speedy trial; the right to file pretrial motions, including motions to suppress or exclude evidence; the right at such trial to a presumption of innocence; the right to require the government to prove the elements of the offenses against the defendant beyond a reasonable doubt; the right not to testify; the right not to present any evidence; the right to be protected from compelled self-incrimination; the right at trial to confront and cross-examine adverse witnesses; the right to testify and present evidence and the right to compel the attendance of witnesses. The defendant further understands that by this guilty plea, the defendant expressly waives all the rights set forth in this paragraph.

The defendant fully understands that the defendant has the right to be represented by counsel, and if necessary, to have the Court appoint counsel at trial and at every other stage of the proceeding. The defendant's counsel has explained these rights and the consequences of the waiver of these rights. The defendant fully understands that, as a result of the guilty plea, no trial will, in fact, occur and that the only action remaining to be taken in this case is the imposition of the sentence.

The defendant is fully satisfied with the representation received from defense counsel. The defendant has reviewed the government's evidence and discussed the government's case and

all possible defenses and defense witnesses with defense counsel. Defense counsel has completely and satisfactorily explored all areas which the defendant has requested relative to the government's case and any defenses.

The guilty plea could impact defendant's immigration status or result in deportation. In particular, if any crime to which defendant is pleading guilty is an "aggravated felony" as defined by Title 8, United States Code, Section 1101(a)(43), removal or deportation is presumed mandatory. Defense counsel has advised the defendant of the possible immigration consequences, including deportation, resulting from the plea.

## 10. <u>VOLUNTARY NATURE OF THE GUILTY PLEA AND PLEA AGREEMENT</u>:

This document constitutes the entire agreement between the defendant and the government, and no other promises or inducements have been made, directly or indirectly, by any agent of the government, including any Department of Justice attorney, concerning any plea to be entered in this case. In addition, the defendant states that no person has, directly or indirectly, threatened or coerced the defendant to do or refrain from doing anything in connection with any aspect of this case, including entering a plea of guilty.

The defendant acknowledges having voluntarily entered into both the plea agreement and the guilty plea. The defendant further acknowledges that this guilty plea is made of the defendant's own free will and that the defendant is, in fact, guilty.

## 11. <u>CONSEQUENCES OF POST-PLEA MISCONDUCT</u>:

After pleading guilty and before sentencing, if defendant commits any crime, other than minor traffic offenses, violates any condition of release that results in revocation, violates any term of this guilty plea agreement, intentionally provides misleading, incomplete or untruthful

information to the U.S. Probation Office or fails to appear for sentencing, the United States, at its

option, may be released from its obligations under this agreement.  The Government may also, in

its discretion, proceed with this agreement and may advocate for any sentencing position

supported by the facts, including but not limited to obstruction of justice and denial of

acceptance of responsibility.

12. **<u>NO RIGHT TO WITHDRAW GUILTY PLEA</u>**:

Pursuant to Rule 11(c) and (d), Federal Rules of Criminal Procedure, the defendant

understands that there will be no right to withdraw the plea entered under this agreement, except

where the Court rejects those portions of the plea agreement which deal with charges the

government agrees to dismiss or not to bring.


_____4-11-22_____                    _____/s/ Edward L. Dowd III_____
          Date                                             EDWARD L. DOWD III
                                                           Assistant United States Attorney


_____                    _____
          Date                                             SUSAN HAMPE
                                                           Defendant


_____                    _____
          Date                                             KEVIN CURRAN
                                                           Attorney for Defendant


13